IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-107-D

| | |
|---|---|
| STACIE EVANS JUSTICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Stacie Evans Justice ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 18, 24). Both filed memoranda in support of their respective motions (D.E. 19, 25). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 8 Apr. 2014 Minute Entry). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I.  BACKGROUND

   A.  Case History

Plaintiff filed an application for DIB on 29 October 2009 alleging the onset of disability on 17 July 2009. Transcript of Proceedings ("Tr.") 30. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 30. On 12 October 2011, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 44-84. The ALJ issued a

decision denying plaintiff's claim on 29 December 2011. Tr. 30-39. Plaintiff timely requested review by the Appeals Council. Tr. 25-26. On 18 March 2013, the Appeals Council denied the request for review. Tr. 1-4. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 22 May 2013 pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination

of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"]. . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 38 years old on the alleged onset date of disability and 40 years old on the date of the hearing. *See* Tr. 34 ¶ 5; 37 ¶ 7. The ALJ found that she has at least a high school education (Tr. 37 ¶ 8), and she testified that she had an associate's degree in business (Tr. 34 ¶ 5). Plaintiff has past relevant work as a bookkeeper. Tr. 37 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 17 July 2009, the date of the alleged onset of disability. Tr. 32 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: arthrogryposis multiplex[1]; migraines; degenerative disc disease of the cervical spine; and degenerative joint disease of the knees. Tr. 32 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the listings. Tr. 33 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform the following activities:

> standing and/or walking 2 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; no pushing or pulling with the bilateral lower extremities; occasional climbing of ramps or stairs; no crouching, crawling or kneeling; no climbing of ladders, ropes or scaffolds; she must avoid concentrated exposure to hazards of dangerous machinery and unprotected heights; she would need to stand for less than 5 minutes after every hour of sitting; and, due to the side effects of medication, she is limited to simple, routine, repetitive tasks.

Tr. 33 ¶ 5. The ALJ characterized this RFC as one to perform "a range of sedentary work as defined in 20 CFR 404.1567(b)," although the lifting/carrying capacities stated are those for light work and the Regulation cited defines light work.[2] 20 C.F.R. § 404.1567(b). The

---

[1] This impairment can be defined as the development of contractures of multiple joints whereby they become permanently fixed in a bent or straightened position restricting movement of the joints. *See* "Arthrogryposis Multiplex Congenita," WebMD, http://www.webmd.com/children/arthrogryposis-multiplex-congenita (last visited 10 June 2014).

[2] Title 20 C.F.R. § 404.1567(b) defines "light work" as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

standing/walking capacities are, however, those associated with sedentary work.[3] Soc. Sec. R. 83–10, 1983 WL 31251, at *5 ¶ 1 (1983) ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

At step four, based on the limitation of plaintiff in the RFC to simple, routine, repetitive tasks, the ALJ found her unable able to perform her past relevant work as a bookkeeper. Tr. 37 ¶

---

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, app. C § IV, def. of "L–Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot htm (last visited 10 June 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

[3] Title 20 C.F.R. § 404.1567(a) defines "sedentary work" as involving:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The DOT defines "sedentary work" as:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT app. C § IV, def. of "S-Sedentary Work." (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot htm (last visited 10 June 2014). "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of charge account clerk, order clerk, and addresser. Tr. 38 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 38 ¶ 11.

### D.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. DISCUSSION

### A. Plaintiff's Contentions

Plaintiff contends that the ALJ erred by: (1) not adequately explaining the weight she gave the opinion evidence; (2) not adequately explaining why she found that plaintiff's impairments do not meet or medically equal any listing; (3) mischaracterizing the lifting and carrying capacities she found plaintiff to have as those for sedentary work; and (4) declining plaintiff's offer to show the ALJ her knees while walking. Each contention is examined in turn below.

### B. ALJ's Allegedly Inadequate Explanation of the Weight Given Opinion Evidence

An ALJ is required to explain in his or her decision the weight given opinion evidence. *See* 20 C.F.R. § 404.1527(c)(2); Soc. Sec. R. 96-2p, 1996 WL 374188, at *4-5 (2 July 1996); Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6 (9 Aug. 2006). Plaintiff argues that the ALJ did not meet this obligation because the only explanation she gave of the weight she accorded the opinion evidence in this case consisted of the following two-sentence statement:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered

opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

Tr. 33 ¶ 5.

Plaintiff's argument is factually baseless. The ALJ did not limit her discussion of the opinion evidence to the statement plaintiff quotes, but presented an extended analysis of the weight she accorded the opinion evidence. She states in relevant part:

> In April 2010 the claimant underwent a consultative physical evaluation and the examiner noted that the claimant had loss of motion of both knees, loss of motion of both hips, significant motor weakness of the lower extremities, she limped as she walked, she could not heel or toe walk, she could not squat and rise, and she could not tandem walk. He ultimately concluded that the claimant could not be gainfully employed (Exhibit 3F). *This opinion is given no weight herein*, as subsequent treatment notes from the claimant's treating orthopedist at Duke University, Dr. Garrett, do not support these findings. Specifically, In [sic] December 2010, the claimant was noted to have diffuse tenderness of the knee but there was no evidence of effusion and x-rays of her knees showed only some "mild" degenerative changes in both knees with good joint space. In March 2011, the claimant was again noted to have no effusion of the knee and she even admitted that her knee was a little better. Significantly, she also admitted at that time that she was exercising three days per week. Finally, on June 7, 2011, Dr. Christopher Brown, an orthopedist who examined the claimant regarding her neck, noted that the claimant's hip exam was normal, she walked with a normal gait, she had normal bilateral extremity motion, and she had normal motor strength of the lower extremities (Exhibit 8F). The undersigned also notes that in May 2011 the claimant was seen by a neurologist, Dr. Li, and he, too, noted that the claimant had a normal gait with no impairment of tandem walking, impairment of walking on toes, or impairment of heel-to-shin and had normal motor strength in the lower extremities (Exhibit 7F). The findings made by both Dr. Brown and Dr. Li are inconsistent with the findings made by the consultative physician.
>
> On September 2, 2011 Dr. Garrett, the orthopedist at Duke University who treats the claimant for her knees, completed a medical statement wherein he indicated that the claimant could work only 4 hours per day, stand 15 minutes at one time, sit 4 hours at one time, lift 10 pounds occasionally and no amount of weight frequently, never climb ladders, and only occasionally bend, stoop, balance, and climb stairs (Exhibit 10F). *This opinion is given little weight*, as well, as it is not supported by the overall evidence. Again, while the claimant does have some tenderness and loss of motion of her knees, she was able to work for many years despite this fairly lifelong condition. Recent treatment notes also show no evidence of joint effusion, normal gait, and normal motor strength of the lower

> extremities, and x-rays show only some "mild" degenerative changes in the knees. The undersigned also notes that the claimant got up from her chair easily at the hearing, and while the representative noted that she had to stand several times during the hearing, the undersigned notes that she stood for less than a minute each time and then sat back down. The representative also suggested that the claimant met a listing because of her joint problem and inability to ambulate effectively, but the undersigned does not find this persuasive, as the claimant does not use a cane or other assistive device to aid with ambulation. There is simply nothing in the record to suggest that the claimant could not perform the sitting requirements of at least sedentary work (i.e., 6 hours in an 8-hour workday).
>
> . . . .
>
> The undersigned considered *the medical opinion* at Exhibit 9F.[4] *It is given no weight herein*. The physician provided an online only consultation and he never saw the claimant in person. He based his opinion solely on the medical evidence submitted to him by the claimant not based upon the entire record.

Tr. 35-36 ¶ 5; 37 ¶ 5 (emphasis added).

The ALJ's analysis is supported by substantial evidence, including the evidence the ALJ cites. Plaintiff's facile challenge to the ALJ's analysis of the opinion evidence should accordingly be rejected.

### C.  ALJ's Alleged Failure to Explain Her Listing Determination

At step three of the sequential analysis, the ALJ stated:

> The medical evidence does not establish the presence of medical findings that would meet or equal any listed impairment. The undersigned considered the 1.00 and 11.00 Listings and finds that the criteria are not met or equaled in this matter.

Tr. 33 ¶ 4. Plaintiff argues that this is an insufficient explanation of the ALJ's listing determination.

If this were, in fact, the only portion of the ALJ's decision elucidating her listing determination, plaintiff's contention might have merit. But it plainly is not. An ALJ's decision must be read as a whole. *See, e.g., Manning v. Colvin*, No. 4:12–CV–204–D, 2013 WL 2617351, at *6 (E.D.N.C. 16 Apr. 2013) (collecting cases), *mem. and recommendation adopted*

---
[4] The opinion is from Russell DeMicco, D.O. of Cleveland Clinic MyConsult and is dated 19 July 2011. Tr. 417-19.

by 2013 WL 2617351, at *1 (11 June 2013). The ALJ's extended, detailed analysis of the medical and other evidence makes apparent why she did not find plaintiff so severely impaired as to meet or medically equal any of the relevant listings, including specifically the 1.00 listings for musculoskeletal impairments and 11.00 listings for neurological impairments.

> In addition to the findings quoted above, the ALJ found in relevant part:
>
> The medical evidence confirms that the claimant has suffered from arthrogryposis multiple for many years and has undergone numerous surgeries (per her testimony at the hearing). It is significant to note, however, that the claimant worked for many years despite this condition and her numerous surgeries. She testified that she worked for 18 years in the family business as a bookkeeper—with some accommodations more recently. She testified that she stopped working in 2009 and then her mother sold the business in 2010. Although she worked in the family business for 18 years, she did not know why her mother sold the business—however, she speculated that it could be because her mother wanted to retire.
>
> The medical evidence does not support a finding that the claimant is completely disabled due to her arthrogryposis and other severe impairments. Exhibit 2F, which is from Duke University Medical Center and dated January 27, 2010, five months after her alleged onset date, indicates that she is "actually quite functional." Although she had loss of motion of her knee, significant tenderness on physical examination and was given Tramadol for treatment of pain, but she was advised to return only as needed. The undersigned notes that the claimant has been on Tramadol at all times since her alleged onset date for treatment of her pain. It appears, therefore, that this relatively mild medication has worked well to control her pain.
>
> . . . .
>
> In addition to her knee problems, the evidence also shows that the claimant has been treated for migraine headaches and neck pain. Significantly, however, her treatment for both conditions was for only a brief period and the claimant is not currently receiving medical treatment for either condition. It is also significant to note that the claimant's own primary care physician told her in April 2011 that she needed to "get out of the house and stop thinking about it," referring to her complaints of migraine headaches. He noted that all of her x-rays were normal and he stated that her headaches were likely tension, stress, anxiety, etc. (Exhibit 6F). The claimant did go see a neurologist, and he noted that she was "not very good at differentiating the severity of headaches." This suggests that he, too, was not convinced of the severity of her headaches (Exhibit 7F). Regardless, the undersigned again notes that the claimant has not been seen by a

> doctor since May 2011 regarding her headaches. With regard to her neck, the evidence shows the claimant was evaluated on only one occasion regarding her neck and she was found to have a large herniated disc in her cervical spine confirmed by MRI. Significantly, however, she was also found to have normal range of motion of the neck with no significant neurological deficits (i.e., normal motor strength in the upper extremities and normal sensation) (Exhibit 7F). The claimant has not been seen again regarding her neck. It therefore appears that her primary impairment relates to the knees, and, again, the undersigned finds nothing in the evidence to contradict a sedentary capacity.
>
> The medical records also do not confirm the presence of any significant and persistent adverse side effects of medications. Although the claimant indicated that her medications made her drowsy, there was no confirmation of persistent and/or significant adverse side effects of medications in the relevant medical evidence of record. However, giving the claimant the benefit of the doubt, mental restrictions are a component of her [RFC].

Tr. 35 ¶ 5; 36-37 ¶ 5. As with the portions of the ALJ's analysis previously quoted, this analysis by the ALJ is supported by substantial evidence, including the evidence she cites.

Given these and the other findings by the ALJ, it is apparent, for example, that the ALJ determined plaintiff not to meet or medically equal Listing 1.02A for major dysfunction of a major peripheral weight-bearing joint on the grounds that plaintiff does not suffer from the inability to ambulate effectively within the meaning of the Listing—namely, she does not have "insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Listing 1.00B2b(1); *see* Tr., *e.g.*, 36 ¶ 5 ("[T]he claimant does not use a cane or other assistive device to aid with ambulation.").

Notably, plaintiff does not point to any specific listing she claims she meets or medically equals. Nor does she point to any specific portion of the ALJ's discussion bearing on the ALJ's listing determination that she contends is erroneous. Although plaintiff cites *Radford v. Colvin*, 734 F.3d 288, 294-96 (4th Cir. 2013) in support of her argument, the ALJ there failed to make

clear the basis for his listing determination, a problem not present here. Plaintiff's challenge to the ALJ's listing determination should therefore be rejected.

> **D. ALJ's Alleged Mischaracterization of Plaintiff's Lifting and Carrying Capacities as those for Sedentary Work**

As noted, while the ALJ found plaintiff to have the RFC for "lifting and/or carrying 10 pounds frequently and 20 pounds occasionally," criteria for light work, she characterizes plaintiff as having the capacity for "a range of sedentary work." Tr. 33 ¶ 5. Sedentary work, of course, involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Plaintiff argues that this apparent discrepancy in nomenclature undermines the credibility of the ALJ's entire decision. The court disagrees.

The ALJ's characterization of plaintiff's exertional level was arguably correct. A person who is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally obviously has the ability to lift and/or carry up to 10 pounds at a time and occasionally docket files and like articles. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Moreover, because the ALJ found plaintiff's ability to stand and walk limited to that at the sedentary level—explicitly identifying the ability as at that level[5]—she would have overstated plaintiff's capacity if she had characterized plaintiff as capable of performing a range of light work. *See* 20 C.F.R. § 404.1545(a) ("Your [RFC] is the most you can still do despite your limitations."). Indeed, the greater need to stand and walk at the light exertional level has been recognized as the principal difference distinguishing it from the sedentary exertional level. *See* Soc. Sec. R. 83–10, 1983

---

[5] *See* Tr. 36 ¶ 5 ("There is simply nothing in the record to suggest that the claimant could not perform the sitting requirements of at least sedentary work (i.e., 6 hours in an 8-hour workday).").

Case 7:13-cv-00107-D   Document 28   Filed 06/11/14   Page 12 of 16

WL 31251, at *5 ¶ 2 ("Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs."). Notably, the ALJ nowhere states that the lifting and carrying capacities she found for plaintiff were themselves at the sedentary level, reserving that term for the range of work plaintiff could perform and her capacity to stand and walk.[6]

Notwithstanding the ALJ's characterization of the range of work she found plaintiff able to perform, there is no question about the lifting and carrying capacity she found plaintiff to have. She stated the capacity specifically by pounds and frequency of activity, not only in the formal statement of plaintiff's RFC, but again in the concluding paragraph of her RFC analysis. Tr. 33 ¶ 5; 37 ¶ 5. She also specified the lifting and carrying capacity by pounds and frequency of activity in her hypotheticals to the VE, although again referring to plaintiff as having sedentary exertional capacity. Tr. 76-77.

More fundamentally, at step five of the sequential analysis, all the occupations the VE identified as, and the ALJ found to be, available to plaintiff are at the sedentary level. *See* Tr. 38 ¶ 10; DOT Nos. 205.367-014 (charge account clerk), 209.567-014 (order clerk), 209.587-010 (addresser). Thus, even if the ALJ were deemed to have actually determined plaintiff to have the capacity to lift and carry at only the sedentary level, the ALJ's determination at step five that

---

[6] The ALJ is not, though, completely without responsibility for the concern plaintiff raises. As pointed out, the ALJ cited solely to the regulation defining light work in her RFC determination. Tr. 33 ¶ 5 (citing 20 C.F.R. § 404.1567(b)). In addition, the ALJ used a Medical-Vocational Rule for light work, Rule 202.21, as a framework for decision making at step five. Tr. 38 ¶ 10; *see generally* 20 C.F.R. pt. 404, subpt. P, app. 2 (setting out Medical-Vocational Guidelines or so-called "grid rules"); *Hickman v. Colvin*, No. 4:12–CV–288–FL, 2014 WL 652545, at *4 n.3 (E.D.N.C. 31 Jan. 2014) (describing use of Medical-Vocational Guidelines), *mem. and recommendation adopted by* 2014 WL 652545, at *1 (19 Feb. 2014). If applied directly, this rule prescribes a conclusion of disabled. The same conclusion is directed by the comparable rule at the sedentary exertional level, Rule 201.21. The ALJ's use of Rule 202.21 as a framework, rather than Rule 201.21, was harmless to the extent deemed erroneous.

there are jobs that exist in significant numbers in the national economy that plaintiff can perform would be proper.

The notion that the ALJ's characterization of the range of work plaintiff can perform, even if deemed incorrect, discredits the other portions of the ALJ's analysis fails. The other portions of the ALJ's analysis stand on their own merits. For this and the other reasons discussed, plaintiff's challenge to the ALJ's decision based on the exertional level nomenclature used by the ALJ should be rejected.

### E. ALJ's Declining to Observe Plaintiff's Knees

At the hearing, plaintiff offered to walk in front of the ALJ to show her how her knees do not straighten up, but the ALJ declined. Tr. 71-72. The ALJ did make findings on other observations she made of plaintiff at the hearing:

> The undersigned also notes that the claimant got up from her chair easily at the hearing, and while the representative noted that she had to stand several times during the hearing, the undersigned notes that she stood for less than a minute each time and then sat back down.

Tr. 36 ¶ 5; *see also* Tr. 81 (related statements by ALJ at hearing). Plaintiff alleges that the ALJ's willingness to make some observations of plaintiff and not others was error. The court disagrees.

The ALJ had ample evidence before her regarding the deformities of plaintiff's knees without the proffered demonstration. This included, of course, the extensive medical evidence, which the ALJ reviewed in detail in her decision, as the excerpts quoted above indicate. *See* Tr. 32-33 ¶ 3; 34-37 ¶ 5. The ALJ also had before her plaintiff's lengthy testimony at the hearing (Tr. 54-75), which the ALJ discussed in detail as well (Tr. 34-35 ¶ 5). Plaintiff has not shown that the ALJ's observation of her walking would have provided the ALJ any relevant information the ALJ did not already have.

14

Case 7:13-cv-00107-D   Document 28   Filed 06/11/14   Page 14 of 16

Plaintiff has thereby also failed to show that the proffered demonstration could reasonably be expected to have changed the outcome of this case, particularly in light of the numerous limitations the ALJ included in her RFC determination to accommodate, at least in part, plaintiff's knee impairment. Again, these limitations included:

> no pushing or pulling with the bilateral lower extremities; occasional climbing of ramps or stairs; no crouching, crawling or kneeling; no climbing of ladders, ropes or scaffolds; she must avoid concentrated exposure to hazards of dangerous machinery and unprotected heights; she would need to stand for less than 5 minutes after every hour of sitting

Tr. 33 ¶ 5.

The cases are legion that acknowledge the prohibition against an ALJ substituting his or her views on medical issues for those of a trained professional. *See, e.g., Hill v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 159, 159 (4th Cir. 2004); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 4 Sept. 1984); *Jones v. Astrue*, No. 5:11–CV–206–FL, 2012 WL 3580054, at *3 (E.D.N.C. 17 Aug. 2012). The ALJ's choice not to observe the dysfunctional mechanics of plaintiff's knees is consistent with this case law. Such an observation is of a different nature than the nonmedical observations the ALJ did make about plaintiff's standing and sitting at the hearing. Moreover, the proffered demonstration was just that, clearly subject to plaintiff's subjective influence, whereas the observations the ALJ made related to what was, ostensibly, plaintiff's objective behavior while at the hearing.

The court concludes that this final challenge by plaintiff to the ALJ's decision lacks merit, as did the others. It, too, should accordingly be rejected.

### III. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 24) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 18) for judgment be DENIED, and the Commissioner's final decision be affirmed.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 25 June 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 11th day of June 2014.

_____
James E. Gates
United States Magistrate Judge